Our final case on this morning's docket is one of the two cases in United States v. Medenbach, number 17-30127. And this is the conditions of probation. Thank you. Good morning, Your Honors. My name is Matt Schindler. I'm the attorney representing Ken Medenbach, who's here today. I'm pleased to have a chance to speak with you about the conditions of supervision that Mr. Medenbach has been subjected to. Those conditions represent, I think, an interesting intersection between the responsibilities of a district court to supervise those individuals who are convicted and to acknowledge that those individuals, despite their conviction, retain some constitutional rights. Counsel, we review for abuse of discretion, do we not? Certainly. Okay. So specifically, which conditions do you contend are an abuse of discretion in all the circumstances, and why? The conditions that I've specifically asked the Court to address today are the restriction that limits Mr. Medenbach to travel or to remaining within this judicial district without permission from the government. That's one condition. The second condition would be the requirement that Mr. Medenbach direct any petition or correspondence that he might make to the government, to law enforcement. And then the third condition would be a condition that prevents Mr. Medenbach from going into or entering or driving through the parking lot or entering the lobby of specific designated government offices. Well, Counsel, in view of the recalcitrance of your client, historically, in terms of his repeated violations and his failure to follow instructions previously, why aren't these within the district court's broad discretion to fashion conditions? Largely because they don't do anything to really address the nature of the underlying violations. I mean, his violation was going to a Federal criminal trial without permission. The issue isn't a history of violations that relate to the conditions that were imposed upon him. He's not someone who flees jurisdictions. So what is it about the District of Oregon that makes us safer or makes or responds to his criminal conduct? If he can go ---- Let me ask you something. Has your client ever asked for permission to leave the jurisdiction to visit his son or to attend the trial in Nevada? Absolutely. And he was given permission, wasn't he? He was given permission in both instances. But that doesn't mean he's given permission in every instance. I understand. But has he ever asked for anything in connection with these limitations where his request was denied? Well, his request was denied, which is what brought us down to the courthouse to ---- in the first instance. He went to Nevada because his request was denied. Okay. Well, let me ask you this. Do you have any case law that you can refer us to that indicates that the items that you've listed are unlawful for a district court to impose? I'm not entirely sure what the question is. By unlawful, do you mean that there is no judge under any circumstances that could impose those conditions? No, no. My question is ---- Well, let's take your first one. It has to do with authority of the court, I think, is what he's asking. In other words ---- Could a court impose these conditions? No. Let's go back. One of the things you've objected to is that he cannot leave the jurisdiction without the consent of the court. The court of the District of Oregon only has jurisdiction over the District of Oregon. There's a reason for the limitation. My question to you is, do you have any case law that indicates that for a district court to limit the ability of someone in your client situation to travel outside the district without consent is unlawful? I disagree. Well, initially, if you wanted to say a case, no, I have no case. I don't have a case. Okay. But I also disagree with the notion that the district court lacks jurisdiction to do something to a probationer who goes somewhere else. I mean, they arrested him in Nevada literally within hours of him calling, of his probation officer calling him. So the notion that a district court here in Oregon, if a person walks across the border to Washington, has no power, isn't a fair ---- isn't an underlying premise that exists in this case. The district court had no problem reaching him in Nevada. And so my question is, is then what's the rational basis for restricting him to the District of Oregon? Why are we safer? Why is it in ---- if the judge wants to do that, then I think the judge explains it. Excuse me. Yes, ma'am. Is that the criterion? Do we independently ---- that's why I asked you about the abuse of discretion standard. We don't have to conclude independently de novo that the world is safer or that Oregonians are safer or that Nevadans are safer. What we're looking at is whether a judge from the district court was within the wide range of discretionary decisions that are allowed to him in making this restriction or condition. So ---- and I'm not aware, again, of a case that says that the only rationale is safety. I'm not suggesting that the only rationale is safety. What I'm suggesting is that there has to be a rationale, is that somewhere along the line, you don't get to impose punishments on people without some reason. And I don't ---- I never heard a reason from Judge McShane during the course of those conversations. In fact, it was never discussed. It's a standard condition. It's done without thought and without reason. And this is an example of that. Well, the rationale, it seems to me, is found in the request from the probation office that discusses efforts that were viewed as attempts at intimidation of Federal employees and others, and lays out a rationale that apparently the district court accepted. So are those factually incorrect in your view? Absolutely. I mean, I don't think there's any circumstances under which quoting the Second Amendment to someone in the government is a threat. That's the Constitution. That's what it says. That's all he did. He wrote a letter saying, you can't do what you're doing to the forest in Grant County. And, I mean, to me, that's fundamental to what a person has a right to do under the First Amendment. If it was threatening, they would have charged him. Well, counsel, it seems to me quite clear in our case law that even fundamental rights and First Amendment rights can be constrained by conditions of probation. I mean, this is obviously a different situation than what the example that's very common is someone who has engaged in child pornography, who's not allowed to have certain kinds of materials or speak to certain kinds of people. So there is not a blanket rule that First Amendment that otherwise applies trumps every possible condition of probation. I'm not suggesting that. Of course there are legitimate conditions of probation that should be imposed on a child pornographer. Okay. And in view of the recommendation of probation that the practices that your client had engaged in previously would justify these kinds of restrictions, why is that an abuse of discretion by the district court? Because the condition of restricting his travel to the State of Oregon or directing correspondence to law enforcement does not address those. It doesn't respond to any of the concerns that they had. If he could go to an anti-government rally in Salem, Oregon, without permission, without talking to anyone, why can't he go to an anti-government rally in Huayreka, California? How is that within a court's discretion to make those decisions? Because that's essentially the way his conditions of supervision are set up. Counsel, I think we understand your position. Did you want to save some rebuttal time? Sure. Thank you. You're down to about a minute and a half. Okay. We'll hear from the government. May it please the Court. Brianna Swift on behalf of the United States. There are three reasons why this Court should affirm. First, the challenge conditions appropriately accounted for the defendant's history and characteristics, the nature and circumstances of the offense. And second, the conditions were reasonably related to the applicable sentencing factors. And third, the conditions are narrowly drawn so as to not overly burden the defendant while also providing sufficient oversight to fulfill the applicable sentencing factors. And just to address a few points by my colleague on the other side, the defendant was never denied any request to travel outside the District of Oregon, and that's apparent at ER 10 through 11. Does that matter in terms of the reasonableness of the condition itself? I mean, suppose that someone was told they had to have permission every time they went to a Starbucks to get a cup of coffee, and they were always allowed, but is that a reasonable condition? I don't really understand how the permissions given later make the condition reasonable. Well, this Court in Watson specified that whether the defendant can obtain permission at all does go to whether it's reasonably necessary. And that's the second prong of the 356B factors. And does that answer your question, Your Honor? Well, kind of. But I think it would be more helpful if you talked about why the specific conditions are reasonable without looking to how they've been applied. Sure. Well, as the district court explained at the probation violation hearing, and this is at ER 24, the court's rationale was that our jurisdiction is within this is where we can supervise him. If he's going to leave the supervisory boundary of the District of Oregon, asking him to get permission and make sure we know where he is isn't asking a whole lot, especially when he's going to be given permission for reasonable things. Counsel, can I ask you along that line? It's my understanding that there are some interstate compacts indicating that it's illegal for one state to allow a probationer to go to another state without the appropriate transfer permit. Is that correct? It is for state offenders. Can you give an example of a state offender? So would that apply here at all? It is not my understanding that it does apply here. So we should not consider that as a rationale then? Not under the interstate compact for adult offender supervision. However, there are some requirements in various states that defendants be given permission before they enter just based off of their history. So probation officers do contact states when they are notified that a defendant is leaving the jurisdiction to make sure that they are permitted per that state's requirements. But here it doesn't apply. And as opposing counsel indicates, even when something is part of the general conditions, the standard conditions, it does have to have some basis. I had a case recently where I wrote with respect to three very longstanding general conditions that the sentencing commission had determined were not adequately explained that people would know what they're supposed to do, and we struck them down. Is this a situation that should be similar where this is perhaps stretched too far? The travel condition? Yes. No, Your Honor. I think that it's clear from other circuits that have addressed this issue head-on that this condition is an administrative requirement that's necessary for supervision. And that goes directly to what the Court explained here, that this condition is necessary for the defendant's supervision. And this makes sense because only if the district court and the probation officer know where the defendant is can they adequately supervise him. And as this Court recognized in Blankensop and Tarigno, which we cite in our brief, the purpose of probation – the purpose of supervision is deterrence, public protection, and rehabilitation, which are the applicable 356.3b factors that apply to probation conditions here. So in other words, to respond to your opposing counsel's comment, what's the problem if he can go to an anti-government rally in Salem or wherever he indicated in Oregon? What's the difference between that and going to one in Nevada? Your answer, I assume, would be it isn't that he's going for that. It's the fact that you don't have probation officers there that can supervise him. Is that correct? That's absolutely correct. The statutory duties of the probation officer require that he be responsible for any probationer known to be within the judicial district. Therefore, it's necessary that they know whether he's in the judicial district at all. So if they give him consent, they can make arrangements with counterparts in other places. So, for example, when he went to visit his son, I think, they would know where his son lived. They could make arrangements there. When he went to the trial, I think it was in Las Vegas, but I may be wrong about that. That's correct. They would know that. But it was all arranged so that they would know where he was and could make appropriate arrangements. Is that correct? That's correct. And it also fulfills the statutory duty of the probation officer to keep informed of the defendant's conduct and condition and to aid the probationer in bringing about improvements in his conduct and condition. And as this Court recognized, we do owe substantial deference to the district court. And as we cite in our brief with the case of Sims, we owe deference to the district court's judgment about which conditions are needed to ensure the successful supervision of the defendant. Moreover, the district court's explanation that this condition is necessary for supervision provides a reasonable nexus and is supported by the defendant's history. The defendant has proven difficult to supervise. The probation violation hearing was based on the defendant's violation of this very condition, and I think that supports its need. Moreover, during pretrial release, the defendant violated the condition that he not enter Federal lands when he occupied the Malheur Wildlife Refuge. Additionally, the defendant has prior convictions for Federal land violations that occurred in the District of Washington. There's more Federal land outside the District of Oregon, and it's reasonable for the Court to believe that the defendant may leave and commit an offense outside the District on Federal lands that's not in Oregon. And I gather the government would indicate that it is that very history that underlies, rather, the district court's rationale for imposing these conditions. Absolutely. Additionally, the conditions do not impose a greater burden than reasonably necessary. They're narrowly drawn, and, for instance, they're not a complete ban. They allow him to get permission, and they're limited in duration, only extending the period of probation. The district court's explanation was adequate. How much longer is the period of supervised release? I believe it's probation, Your Honor. Probation? I'm sorry. He was first put on probation in August of 2016, and it's a 5-year probationary term, so 2021, I believe. Okay. The district court's explanation makes clear that the condition is not overly burdensome. It's not asking a whole lot, and he's going to be given permission for reasonable things, as he has, and the record shows that he's never been denied any requests that he's made. I realize that we're supposed to stay within the record, but to your knowledge, has he ever asked for anything, whether or not in the record, that he was denied? I did check with the probation officer, and he's never been denied a request that he's made under my discussions with the probation officer. What is your response on the question of channeling communications to particular individuals in the government who are used to him? Well, I think this was a reasonable condition, Your Honor. These law enforcement officers know the defendant. They know his probation officer, and if they're given information that is concerning, they can directly report that to the court, and they can address his conduct and condition in an effort to aid in his improvement, as is the purpose of probation. And there's nothing to suggest that his letters will simply be thrown. It makes sense because it also allows notification to people at those two agencies. This is only in regards to the BLM and Forest Service. It allows those agents to notify the employees and put them on notice and not cause any unnecessary anguish by his presence there. Again, this goes to the background of some of the crimes for which the defendant was accused, right? Absolutely. It relates directly to the defendant's conduct on probation. He sent letters to the BLM and Forest Service offices and was seen driving through the parking lots of these offices. He also has, as the Court mentioned, a history of using intimidation practices. For instance, the district court said at the probation violation hearing that the letters sound like a bunch, and this is at ER 42, that it sounds like a bunch of guys are going to grab some guns and come down to the office, and that makes people nervous. He went on to say that it makes people nervous when the defendant testified at trial that he knowingly placed himself near armed militia, who had a pretty negative view of the government, to act as a security force for him. So the district . . . So does this answer in part opposing counsel's comment about a reference to the Second Amendment, i.e., that those who received that comment, given the defendant's history, could reasonably construe those as a threat to use firearms? Yes. And I think that the record makes clear that these employees were skittish by the defendant's presence and his history, unique history, that they knew about. Again, these conditions involve no greater deprivation of liberty. They are limited in duration, and he can still go in person to these agencies. And I see that I'm out of time. Unless there's further questions? I don't believe so. The conditions imposed were reasonable and within the district court's discretion, and we ask the Court affirm. Thank you. Thank you. Mr. Schindler, you have some rebuttal time. I'm shocked. Thank you. There are conditions besides the conditions we're discussing here today that apply to Mr. Medenbach. And so every single issue that they have raised in terms of responding to this man's, you know, threat or criminality are addressed with elsewhere. And so these aren't about responding to those issues. How do you know that? Well, first of all, because that isn't what the judge said. I mean, nobody said anything about this travel condition. No one says anything. They just do it. Counsel, you're obviously an advocate, had some experience. When you're talking about general conditions, particularly when they are limited in time, how many times have you seen a district judge go through those one by one and explain them? Truth be told, Your Honor, this is the first time I've ever thought about it. Exactly, because it is. It's not something that comes up frequently. This is the first time I've ever thought about it. And the reason I thought about it was because Mr. Medenbach said, I wanted to go to an event in Yreka, and so I called my probation officer, and I left a message with my probation officer and said, I'd like to request permission. Permission was not denied to him. It was just never granted. His probation officer never called him back, never communicated with him, and the event came and went. Is that in the record? Because he didn't want to go to jail today. Excuse me? Yes, ma'am. Is that in the record? No, that's not in the record as far as I know. That just occurred this last week. So part of my argument is that it's not enough that people say yes, as you duly pointed out. It's the question of whether and what things are appropriate to have to get the government functionary. And in terms of threats, again, you have the letter, the letter's in the record, and it's not a threat. It is a statement of the Constitution, of the Second Amendment. Counsel, respectfully, when you read the total record of this case and of your defendant's, shall I say, longstanding concerns about the government and its practices, are you saying that it is unreasonable for the district judge to take into account some of the things that your client has done instead with respect to government officials and government land in imposing these conditions? Of course it's reasonable for him to consider someone's history. But that doesn't justify the onerous level of conditions applied to this man given the conviction that he suffered. He's not a child pornographer. I understand. But, again, this is, as my colleague and I have both indicated, this is we review this for abuse of discretion. I think you've indicated candidly that, given the background, that there were bases that the court could rely upon. These are standard conditions. People usually don't talk about them. This is the first time I remember anybody bringing these up, kind of a unique situation. But it's hard to see how we could find the district judge abused discretion given the history involved here. Well, what I would point to, again, is the presence of conditions that make perfect sense, like you're responsible for disclosing a residence to your probation officer. Where you live, you have to disclose. Travel is necessarily a momentary experience. To go for a day to go see your son and not be able to do that because you can't get a hold of your probation officer is not fair. And that didn't happen. It didn't happen this time. So we were supposed to speculate that it might happen in the future. Well, you have to look at a condition based on how it's going to be applied, not based on how it was applied. What could they do? They could say, I'm not picking up the phone today so you don't get to see your son. That's what could happen. And so that's why we're here. Thank you, counsel. Thank you. You've exceeded your time, but we understand your position. The case just argued is submitted. We appreciate both counsel's arguments. And for this morning's session, we stand adjourned.
judges: Graber, M. Smith, Korman